9 . I'm trying to disrobe. That's OK. Take your time. Please support. My name is Robert Owen. I'm here on behalf of Great American Insurance Company. We are here today asking you to review the district court's summary judgment in favor of employers mutual insurance company. And that judgment really boils down to two issues. I believe the first is whether there is evidence allocating the settlement in the underlying case to between covered and uncovered claims. And second, if there is such evidence, the priority of coverage between these two excess insurance policies. As is set out in the briefing, the court will see that there are essentially five, not essentially, there are five affidavits which Let me just ask you on that priority of coverage point. Yes. Court assumed arguendo. Yes. That EMC was ahead of you all. Correct. But then ruled against you on the allocation issue. And so if we were to find that there was a fact issue on that. Yes. Would we need to send it back on the assumed arguendo or should we determine that question? I think the answer to that is that it depends. If you find there is a fact issue on allocation, then I think the case would need to go back to the district court. Well, I'm sure that's true. But what I'm saying is the question of whether EMC, you know, in the line, we had the primary insurance. Nobody's debating that. Then we have the excess insurance. And in the line, the district court just assumed arguendo. EMC was ahead of you all. All other things being equal, they would owe their million, and then you all owe your up to $30 million. Correct. But that didn't end up saving the day for you, so it didn't really matter. What I'm saying is if we come out your way or at least find a fact issue, then this assumed arguendo, is that a purely legal question or are there facts that need to be addressed? I believe that's a purely legal question. So should we determine it? That's my question. And the answer to that is yes. Okay. That's what I thought you would say, but it took us a while to get there. I think I misunderstood the initial premise of the question. But, yes, that is a legal question. It can be determined as a matter of law in this court based on the record that's before the court. So I guess going back to the initial question of whether there is sufficient evidence of allocation, what the district court decided was that the affidavits and the affidavits allocating between covered and uncovered claims were conclusory. We strongly disagree with that conclusion. There are four affidavits. They each assert or affirm that there were more than $7 million of covered damages. The settlement was for $7 million. So that is the conclusion, that there's more than $7 million of covered damages. And so then what are the facts that support that conclusion? The affidavits are from Liberty Tire's defense counsel and from a claims adjuster at Great American, and they're largely similar and based on the same facts. But the defense counsel based his conclusion on what he said was the reasonable settlement value for the claims against Mr. Decker, who is the driver for negligence, and against Corona and Liberty Tire for vicarious liability. He based that opinion on the potential liability and damages exposure, the evaluation based on the discovery and the underlying case, the plaintiff's alleged damages, the plaintiff's claims and theories of recovery, the venue for the lawsuit, his review of the applicable law, the capabilities of the plaintiff's trial counsel, and his own experience as defense counsel for truck drivers and trucking companies in serious trucking accidents. Ms. Uena's affidavit is largely similar, although she is obviously not a defense lawyer. So the facts are that long list of items which I just set out. The conclusion is that there are more than $7 million of covered damages. The affidavits didn't stop there, though. They also opined that the evidence in the underlying lawsuit, I'm quoting, overwhelmingly supported, end quote, the plaintiff's claim that Decker negligently operated the vehicle and also overwhelmingly supported the plaintiff's claim that Corona and Liberty Tire were vicariously liable for Decker's negligence. The affidavit also said that the direct liability claims against Liberty Tire, which are the only claims that would not be covered by the employer's mutual policy, were both irrelevant and superfluous given Liberty Tire's likely vicarious liability. So in our opinion, the affidavits establish that there are more than $7 million of covered damages and certainly more than a million, but if the court were to disagree with that, we think that there's certainly more than a scintilla of evidence that would raise a fact issue on the allocation question. So we think the district court's judgment should be reversed on that ground. Turning from there to the priority of coverage issue, which, as Judge Hange, you noted, the district court just assumed that employer's mutual policy was primary to great Americans. But the question there turns on the definition of the retained limit and underlying insurance in both these policies. These two policies are both excess policies that apply subject to underlying retained limits. The retained limit in the employer's mutual policy is defined as the available limits of underlying insurance, and the term underlying insurance is also a defined term, which means any policies listed in the declarations under the schedule of underlying insurance and any other insurance available to the insureds, but only when such other insurance provides the same type of coverage provided in the policies listed in the schedule of underlying insurance. So breaking that down a little bit, the schedule of underlying insurance in the employer's mutual policy lists a employer's mutual primary policy, which provided a million dollars of coverage for commercial auto liability policy. The liberty mutual policy, which is also set out in the record, that's also included in the retained limit of the employer's mutual policy because that policy provides the same type of coverage as the employer's mutual primary policy. It's also a commercial auto policy. The great American policy is not included in the retained limit because it's not a commercial auto policy. It's an excess policy. So then we look to the great American policy, and how does it define the retained limits? The great American policy defines retained limit as the greater of the total amounts stated in the applicable limit of the underlying policies listed in the schedule of underlying insurance and the applicable limits of any other insurance providing coverage to the insured during the policy period. So for the great American policy, the liberty mutual primary policy is listed on the schedule of underlying insurance, and then both of the two employers' mutual policies, both the primary and the excess, would also be included in the retained limit because Liberty Tire isn't insured under those policies for its vicarious liability for corona and decorators. So the any other insurance is the key here. I'm sorry? The any other insurance is the key distinction between the two. That is correct. Which puts EMC in the line ahead of you all. That's correct. The excess policy. That's correct. And that's purely a legal question. It's purely a question of law, yes. So our view is that to give meaning to the plain language of these two policies, the court would have to view the EMC policy as primary to the great American policy, which means that it would have to pay its full million-dollar limits before great American's coverage is triggered. And, of course, here it's paid zero dollars of its limits, which is why we're here today. Employers' mutual has directed the court to this court's case called EMJ. We don't believe EMJ controls here because it's decided under Mississippi, not Texas law, and what the court held in EMJ was that Mississippi law requires courts to look to policies, other insurance provisions to determine how the policies work together. In our case, we don't get to the other insurance provisions because under Texas law, the other insurance provisions only apply if the policies overlap. And here, based on the retained limits language, these two policies never overlap. So there is no other insurance issue. And there's no case that syncs the SYNC, syncs the Mississippi law in this area with Texas law? No, not that we're aware of, no, Your Honor. We would just say that it's a separate law. Texas has a lot of insurance law. It doesn't really need a lot of help from other states. That's true. Texas insurance law is very well defined by the Texas Supreme Court. Well aware. And much of it was certified questions from our court. That's true. In the short time I have left, there are a few other issues. I believe they're sort of ancillary to the two primary issues we've already discussed. But EMC has made an argument that the settlement was a voluntary payment, which if the payment was voluntary, if Great American's payment was voluntary, then they would not be entitled to recover. It's our position that it wasn't a voluntary payment. First, there was an agreement between the parties that this is precisely how we would proceed, that Great American would cover the $4.3 million of its share of the settlement, and then the parties would litigate the issue. But even if there wasn't that agreement, the Texas Supreme Court has been very clear that when an insurer pays to settle claims against its insured, that's not a voluntary payment. So we don't believe that this is a real issue. And with that, unless there are any further questions, I'll give back the remaining two and a half minutes of my time. Yes, you saved time for rebuttal. Yes, I did. Thank you, Mr. Owen. Mr. Mitchell. May it please the Court, as Mr. Owen correctly said, this case is primarily about two issues. It's about coverage and it's about priority. Before the priority question can be reached, however, coverage has to be determined first. Great American admits it's undisputed that they settled both covered and non-covered claims. They had the burden, therefore, to segregate covered from non-covered damages, and they did not do it. The trial court correctly held this, and therefore they cannot recover. Let me first say that EMC is not saying in a vacuum that it is not possible to apportion in a hypothetical case a settlement made on behalf of a defendant for its vicarious liability from its liability for its own direct negligence. We're not saying that that's always impossible and it can never be done. What we are saying is that in this particular case, the record reflects two things. Number one, that Great American was unaware of the coverage issues or of any need for any allocation with regard to the settlement in connection with it when they made the payment. And number two, that Great American did not produce any evidence from which an apportionment could be made. Wait a minute. They agreed with you all. I mean, this happens all the time. You've got the underlying case. Somebody died, which is terrible. Somebody else was seriously injured. The possibility of a huge jury verdict is very big. So you want to get that cubby. Do you want to get that settled? All of the insurance companies want that done. And the way it's handled, I mean, it happens like this all the time. Let's just get this settled. Let's pay the plaintiffs off, and then we'll fight amongst ourselves as to who owes what. That happens all the time. How you all could call that voluntary, and you all agreed here, I mean, that's just beyond me. Well, this is two different issues. The voluntary, let's just get to the voluntary first. We concede, and we conceded in the trial court, that Mississippi law is considerably more strict on the volunteer argument than Texas law is. We cited the Colony v. First Specialty case, which, yes, was Mississippi law, but even as we stand here, it's only two years old. And we cited it because it was so very similar, what the carrier did in that case was so very similar to what Great American did in this case, which was take the position right up until the last minute that there was no coverage and then pay it. But I'm going to concede that as far as the volunteer argument is concerned, compared to the other two issues, it's not a very strong one. But that's different from coverage. No, I understand that. But the notion is, okay, now we have limited the amount that any of us, and I'm speaking as if I'm the insurance company, any of us may owe, but now we need to fight amongst ourselves who owes what. So that's where you all are. Why isn't that where you are, not debating that, oh, you would have had this or that or whatever? You're debating where are you now that you managed to cubby the total amount owed in the underlying case? This court said in ResCare that when it comes to allocation, the purpose is to determine what portion of the settlement was reasonably intended to concern claims covered by the policy at issue. In this case, they filed this lawsuit saying we're trying to get back money that we paid on behalf of Corona, which is our named insured. When it was pointed out to them that, well, wait a minute, certainly you paid something on behalf of Liberty Tire, your own named insured, and by the way, they don't have additional insured coverage under this policy because of a contract requirement that only required a million dollars in coverage, and you've not segregated out, you're claiming you paid on behalf of Corona. What about Liberty Tire, and what about the coverage problem there? Their response to that was to say, well, okay, yeah, we paid on behalf of Liberty Tire, too, and, oh, by the way, they're an insured under that portion of your policy that provides coverage for vicarious liability. Then it was pointed out to them, and this was an ongoing moving target in the summary judgment briefing, well, okay, but if that's true, then Liberty Tire only has coverage under the EMC umbrella policy for its vicarious liability for the conduct of others. It doesn't have any coverage for its own direct negligence. Then they said, oh, okay, well, basically we paid to settle all the claims of, this was all Liberty Tire's direct negligence. As we stand here today, their pleading still says they paid on behalf of Corona, and the district court opinion counsel on appeal was not involved in the settlement of this case, nor was he involved in the case. In this case at the trial court, but if you look at the Satterfield case, now at the trial court it's American Guarantee versus U.S. Fire, but I'm just going to call it Satterfield. The district court in this case relied upon this case because it's very, very similar to what happened there. The folks in Satterfield caught on about a half step later than Great American did in this case. They had already filed summary judgment motions, and then in a supplemental brief, after they'd had an argument and Judge Rosenthal let them know that she wasn't very thrilled with their case, they filed insufficient affidavits trying to create a fact issue on apportionment, and the court said it didn't work. They cite this court's opinion affirming that, and they try to distinguish it on procedural grounds by saying, well, in that case they tried to raise this in a supplemental brief, in a reply brief, and so it couldn't be considered, and so that case doesn't apply here. Your argument today seems to be it doesn't really matter if you had affidavits that weren't conclusory. If you didn't really give enough attention to what you were doing when you tried to pay off the underlying case and move into the let's fight among ourselves as insurance companies, then you lose regardless. That seems to be the argument you're making. No, that's not really the argument. That is all to provide context as far as what was going on. The real legally significant argument here is that the evidence that they actually submitted with regard to allocation is inadequate. Okay. If you look at Judge Rosenthal's opinion and this court, they say, well, they try to distinguish it on procedural grounds, but this court also recognized that the trial court there found their affidavits insufficient on the merits, and what Judge Rosenthal says is S&P does not identify any record evidence from which a fact finder could determine what portion of the settlement was paid to reimburse for mold remediation damage. In other words, she said there was presented no evidence from which a fact finder could determine what specific portion of its settlement should properly be allocated to covered versus uncovered damage. And this gets to the fallacy of the argument that they're making here, Your Honor, which is that essentially all we have to do is show that $1 million worth of covered damage was involved in what we settled and therefore we can recover. That's not the test. They have to allocate numerically covered from non-covered damages. That is what this court held in Satterfield, and that is what they failed to do. Their affidavits simply said— You're talking about Judge Rosenthal in the other case. I'm sorry? You're talking about Judge Rosenthal in the— Yes, but I'm saying that's the same situation here. Because I'm like, Judge Starr— No, no, no. Okay. But if you read Judge Starr's opinion, he's— He cites Satterfield and discusses it because it's— Yeah, yeah. I understand. I just was confused by what you're saying. But what they're saying is essentially we've got these affidavits that say, yeah, the facts may have supported a vicarious liability claim against Liberty Tire, and then they conclusory state, oh, and by the way, the vicarious liability claims were worth more than we paid. That's not an allocation. That's not a basis from which anyone can— Okay, but let's take a look. I mean, if they were trying to— Like, let's say that EMC was also a $30 million excess, and they were trying to dump all the money onto EMC. Then your argument would make sense. But the reality is here, even if y'all paid the million, Great American would still be paying—I'm not good at math, but three-something million as well, right? Well, assuming—but again, you're getting to priority and the other insurance issue before you're getting to coverage. They're the ones that paid the settlement, so it's their burden to allocate covered from non-covered, and they did not do so, and that is fatal to their own coverage. Okay, but they have—I agree that if we think the affidavits are conclusory, then there isn't much left. I would agree with that. But let's assume for the moment— I'm sorry, but let me just get in. It's not just that they're conclusory. It's also that they're neither here nor there because they don't actually provide a basis for apportioning covered from non-covered. Okay, so if we threw the affidavits out the door, then I think I can see where you are. But if we don't, if we accept the affidavits, then isn't it true that there is something that is covered by EMC? And EMC only has $1 million of this $7 million. So it's not—again, we're not talking about $30 million versus $30 million. So the proportioning, I think, is a little bit different. Well, I think you're—I think you're buying into their argument, which is that, look, as long as we show that there was $1 million worth of covered damage, none of this matters. That's not the test. You have to segregate covered from non-covered and provide some evidence of a basis for the numbers on both of those. And they didn't do it. I would, again, encourage the Court to read the Satterfield case because that's what they were trying to do. But there has to be an allocation. The test is not just—it's a different question. The question of whether what we settled was X amount is a different question from what was covered and what wasn't. I may not have said that very well, but there— Yeah, maybe you want to restate that a little bit in the context of this case. And this case is unusual because it involves a priority issue. Well, it does, and I mean, so granted I haven't done insurance law as a lawyer in some time, but as I said, this bucket notion of let's get the underlying case done and then let's debate it is fairly common. And the notion that the settlement agreement has to lay out who owes what is, I don't think, totally accurate. No, we're not contending that there can never be a post-settlement agreement allocation. They cite cases in their brief, and there are trials on allocation post-settlement all the time. We're not saying that that can never be done. We're saying in this case, the record reflects that none of this was even on their radar screen until they responded in connection with the second set of motions for summary judgment after being told each step along the way, this is why you can't recover, this is a coverage issue. And so if the issue is what were they paying for there, in their minds, in great Americans' minds, there was no there there because they weren't even aware of any of these issues. And so that meant, and again, this is primarily for purposes of context, it meant that there was no thought given to any kind of allocation. But most importantly, when it came to the summary judgment practice in this case, the evidence that they produced of allocation was basically none. All they did was produce a conclusion that, well, the vicarious liability claims, which we've now learned during the course of this lawsuit were the covered claims, are worth more than we paid, and so therefore that's it. That's not an allocation. That's not apportionment. And so Judge Starr never got to the priority issue because he concluded, based largely on Satterfield because it's the closest case factually. Well, he assumed it arguendo, as I understand. Well, there's one sentence in there. I frankly don't know why Judge Starr said, I assume arguendo. Are you talking about the priority? Are you talking about the? Yes, the priority. Yeah, there's one sentence in there. He says the court assumes without deciding that we would go first. And that takes us to that issue, which you don't get until they apportion, which the trial court correctly concluded that they did not do. Now, as far as the priority issue is concerned. Do you agree that that's a purely legal question? The priority issue? Yes, we do. If we get there, we can decide it. Yes, and in fact, it might actually be better if the court went ahead and addressed it even if it found a fact issue because if we're going to go have an allocation trial, if the result of that is that my client owes $143,000, which is what it would owe if the policies were on the same level, because that would be 3.33%, our $1 million to their $30 million, it would be useful for us to know that as opposed to paying $143,000 and then, well, if we have a trial, if they carry their burden, then we're going to have to pay the whole million. Obviously, that affects what we're willing to pay to settle the case. But to get to the priority issue, we did cite the EMJ case out of this court, which addressed the exact same argument that they are making in this case, which is based on a retained limit definition, and yes, that case was decided under Mississippi law, but unlike the volunteer issue, there's nothing different about Mississippi law when it comes to other insurance clauses than there is in Texas law. In fact, this court said in Colony v. United Fire that to determine priority of coverage, a court must first determine whether the insured is entitled to complete coverage by each of the insurers involved. If the insured is covered by each insurer, then the court will determine if each applicable policy contains an other insurance clause that seeks to limit coverage liability. Texas law is the same as Mississippi law when it comes to this issue. You look to other insurance clauses. Their retained limit argument essentially, and I think this gets into looking at the overall pattern of coverage. These are both true excess policies. It's not one that's claiming to be excess just because it happens to have an excess clause in its policy. These are both true excess umbrella policies. And so looking to the overall pattern of insurance and also getting to hardware dealers where the court said, look, we're going to, when two policies each say that they're excess because of the existence of other insurance, we're disfavoring those types of games. We're going to tend to construe them as conflicting even if they're not. And in substance, what Great American is doing here is they're making an other insurance type argument based on a retained limit definition. They're trying to play a gotcha, oh, we're an excess, excess policy, not just an excess policy because our policy happens to define retained limit just differently from yours. That's the same type of argument that the Texas Supreme Court and hardware dealers said. We don't want to get into these games. We're looking at the true nature of the respective policies, and these are both excess policies. And so we would contend that even if you get past the coverage and allocation issue, which you can't, then clearly if you read both policies' other insurance clauses, which Texas law requires, they both say if there's any other insurance out there, we're excess, and they conflict. I believe that their counsel at the hearing on the summary judgment motion, if I'm not misremembering, actually conceded that if you just look at the other insurance clauses, they do conflict, and there's no way around that. It's just plain as day. And so our contention is, no, what you've got here is two excess policies, and so at worst they would contribute to the loss pro rata based on limits, which is actually what we had offered to contribute when it came time to settle the underlying case in any event. So the volunteer argument getting to the issues aside from coverage and apportionment and priority, we already talked about the volunteer. I concede that that's just not our strongest argument because of the differences in Mississippi and Texas law. It's just that factually similar, the way they did this was almost exactly what the carrier in that case did. Lastly, they make an argument, and Mr. Owen didn't really even address it in his argument, some argument based on the indemnity provision in the contract somehow rendering our coverage primary to theirs. I frankly never understood that argument. If you read the Travelers v. American Indemnity case from this court, I think it's pretty clear that it's only when the indemnity agreement is valid and enforceable that it alters the priority of coverage. It renders the indemnitores coverage primary to the indemnities. If you look at the indemnity provision in this case, it doesn't meet the requirements of Ethel. It's not enforceable, and so that argument just, frankly, is a complete nonstarter. So unless anyone has any other questions, I'll leave that in my time. Thank you, Mr. Mitchell. Mr. Owen, you've saved time for a bow. Well, if I understand that argument correctly, it seems to be completely divorced from the record in the case because the fact of the matter is there are affidavits that do allocate the settlement between covered and uncovered claims, and what those affidavits say is that 100% of the settlement was for covered claims, that the reasonable settlement value for the covered claims exceeded the amount of the settlement, and so 100% of the settlement should be covered. I would also point out that, as the Court knows, we're here on... There were competing motions for summary judgment, and Employers Mutual's motion was granted on the basis of coverage, but for that to be proper, Employers Mutual would have needed to establish, as a matter of law, that there was no covered claim paid in the settlement, and there's just no evidence in the record that the settlement included zero dollars of coverage. It seems to me, even if the underlying case had gone to trial and the jury had awarded $30 million, we still would have needed you to allocate how much was us. Now, of course, the jury would have allocated who owed what, so maybe that's the answer, but it seems to me that they're arguing that the fact that they could have lost, that Liberty Tire could have been held liable for vicarious liability, Corona could have been held liable for X, Y, Z, all of that doesn't matter to the allocation because you still have to prove percentages. That's what they're saying. Respond to that. Yeah, I think that's correct, and the response to that is that the evidence in the record says what it says, and what it says is that 100... I'm sorry. You're saying the record says what it says. I know. I'm trying to get to my point, which is that the affidavits say that they allocate 100% of the settlement to covered claims, so I would say that there is an allocation. It's not 50-50. It's not 60-40. It's 100% zero. And even... So is it correct that even if we sent this back and it went to a jury trial on the allocation, even if the jury had found, I don't know, a higher... found some percentage goes to Liberty Tire Direct, it still would have to be a pretty high percentage for them to not owe their million, right? That's correct. Because you all are still paying several million, even assuming arguendo, we're back to that, that they pay their million. It's not like you walk out the door, which happens in some cases. You'll never walk out the door here. That's correct. Without having given some money away. That's correct. There's $7 million that has been paid, and we would have to find amounts that added up to $7 million. Right. Let's look at those numbers. Is it 2.6 was the primary? Right. So there's a $1 million employer's mutual primary policy, which was paid, approximately 1.6, 1.7 Liberty Mutual primary policy that was paid, and then Great American paid the remainder, which was 4.3 million. So even if EMC paid the million, you all still paid almost half the settlement. More than half. So if the evidence is that the possibility of the direct liability of Liberty Tire is very low, that would seem to answer the 50-50 argument. Yes. So that's what I'm trying to understand. If we assume arguendo the priority is, EMC is ahead of you all, and if the affidavits support the notion that it's considerably less than 50-50 onto the Liberty Tire Direct, then does that end the debate, even if we accept his argument about the allocation point? End the debate in the sense that it needs to go back to trial, or end the debate in the... Well, end the debate that you all did not present evidence. If we assume the affidavits are worth something, that you did not present evidence of allocation. Mm-hmm. Well, if we assume that the affidavits don't present evidence of allocation... No, no, okay. What I'm trying to say is you say it's 100%. Yes. He argues that you have to do some other percentage. Correct. And I'm saying even if you simply accept the statement that Liberty Tire's Direct is a very low part of this, you already have paid 50%. Yes. So then that would seem to answer that. I think that that's correct, Your Honor. Is that what... I mean, I'm not trying to speak for you. I'm trying to understand. No, and if I'm understanding you correctly, what I hear you saying is that there's a low... a low percentage of direct... If we assume there's a low percentage of direct negligence, then it really doesn't matter because of the amounts that have already been paid. I think that that's true in a practical sense, but it might not be true in a legal sense because we would have... If there's a fact issue, then we would need to send this back for... No, I understand that. Again, to get to a fact issue, we have to believe your affidavit. Correct. We believe your affidavit. If we're the jury and we find for you, it's still less than 50%. That's what I'm trying to say. Okay. Maybe I'm not following you exactly. It's worrisome because it's a friendly question and if you don't agree with it, that's fine. I think I do agree with you. I'm just... I'm just trying to understand his argument versus yours. What is your point? Your point is just the 100% is enough and we don't care about the point that you're making, Judge. Well, I think my point would be twofold. It would be, first, if you think there's some evidence of... If there's some evidence that there's covered and uncovered claims, then we have a fact issue. The judgment should be reversed and the case remanded to the district court for trial. If the court agrees with us that the affidavits show that there's 100% covered claims in the settlement, then there is no fact issue for trial and then the court should get to the priority of coverage question. I feel like I didn't do a good job. You did not, but that's okay. Maybe my question wasn't. Let's try one more time. This is a third point. I'm sorry. Is that okay? This is a third point. So we have the argument that the 100%... I get it. We have the argument that these affidavits should be thrown in the trash can. I'm asking a third question, which is if we accept the affidavits but we don't view them as 100%, we view them as making Liberty Tire's direct liability very low, I'm asking if it's enough that the very low would just have to be under 50% for you to have at least provided enough allocation that if we believe the affidavits, if we're the jury believing the affidavits, you would still prevail. That's the question. So if the affidavits made the vicarious liability below 50%, if they made them 50%... The direct liability. Yes. If the affidavits made the direct liability 50%, then I agree with you that we would prevail. But the affidavits, there's... I don't believe there would be any way to make that percentage finding based on the evidence. No, I'd say under 50%. In other words, they make them minimal. Sure. Yes. Then, yes, I do agree with you that we would prevail. Sorry, I guess I'll just say I didn't ask a good question so that you don't feel bad that you didn't give a good answer. Well, I'm sorry to take so much time to try to answer your question. Well, thank you. Thank you, Mr. Owen. Your case and both of today's cases are under submission, and the court is in recess until 9 o'clock tomorrow.